UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VENCIL C. GREEN,<br><br>           Plaintiff,<br><br>      v.<br><br>VAL LACEBAL, et al.,<br><br>           Defendants. | No.  2:21-cv-01636 DC SCR P<br><br>FINDINGS & RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action under 42 U.S.C. § 1983.  Before the court are the parties' cross motions for summary judgment.  (ECF Nos. 46, 63.)  For the reasons set forth below, the undersigned recommends that both motions be denied.

**BACKGROUND**

**I.      Procedural History**

This case proceeds on plaintiff's complaint filed on September 13, 2021.  (ECF No. 1.)  On screening, the previously assigned magistrate judge found the complaint stated a cognizable First Amendment retaliation claim against defendants V. Lacebal, a supervisor for the Prison Industrial Authority ("PIA"), and K. Molle, a manager for the PIA.[1]  (ECF No. 9.)

---

[1]  On September 25, 2023, District Judge Drozd granted defendants' motion to dismiss the complaint's official capacity claims, leaving only plaintiff's retaliation claim against defendants

1

Plaintiff filed his motion for summary judgment on May 6, 2024 (ECF No. 46), and defendants filed their motion on October 9, 2024 (ECF No. 63). Both motions are fully briefed.

**II.     Allegations in the Complaint**

Plaintiff states that, at all relevant times, he was a prisoner at Mule Creek State Prison ("MCSP"). (ECF No. 1 at 1.) In April 2021, the MCSP Facility B Unit Classification Committee approved plaintiff for a job in the PIA Fabrics Department. (Id. at 5.) Sometime in June 2021, plaintiff's correctional counselor informed defendant Lacebal that plaintiff was approved for this assignment. (Id. at 6.) On June 18, 2021, plaintiff saw defendant Lacebal at the entrance of the vocational center. (Id.) Plaintiff introduced himself and told defendant Lacebal that he was approved for PIA Fabrics back in April 2021 but had not been interviewed or assigned yet. (Id.) Defendant Lacebal informed plaintiff that she was instructed by defendant Molle to not hire plaintiff "because of all [his] past grievances and civil suits…against P.I.A Staff." (Id. at 6-7.)

## LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle

---

Lacebal and Molle in their individual capacities. (ECF No. 40.)

1   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

2   Indeed, summary judgment should be entered, "after adequate time for discovery and upon

3   motion, against a party who fails to make a showing sufficient to establish the existence of an

4   element essential to that party's case, and on which that party will bear the burden of proof at

5   trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element

6   of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

7        By contrast,

8        When the party moving for summary judgment would bear the burden of proof at
         trial, it must come forward with evidence which would entitle it to a directed
9        verdict if the evidence went uncontroverted at trial. In such a case, the moving
         party has the initial burden of establishing the absence of a genuine issue of fact
10       on each issue material to its case.

11  Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006) (quoting C.A.R. Transp.

12  Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)).

13       If the moving party meets its initial responsibility, the burden then shifts to the opposing

14  party to establish that a genuine issue as to any material fact actually exists. Matsushita Elec.

15  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the

16  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

17  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

18  admissible discovery material, in support of its contention that the dispute exists. See Fed. R.

19  Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a

20  fact "that might affect the outcome of the suit under the governing law," and that the dispute is

21  genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving

22  party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

23       In the endeavor to establish the existence of a factual dispute, the opposing party need not

24  establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

25  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

26  trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)

27  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the

28  "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see

whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

## CROSS MOTIONS FOR SUMMARY JUDGMENT

### I.     Summaries

#### A.     Filings Related to Plaintiff's Motion for Summary Judgment

##### i. Plaintiff's Motion

In his motion (ECF No. 46), plaintiff argues defendants Molle and Lacebal colluded to violate his First Amendment rights by denying him a position with PIA Fabrics. He asserts that on June 18, 2021, defendant Lacebal told him that defendant Molle directed her not to hire him because of his past grievances and civil lawsuits against PIA staff. (Id. 5.) Plaintiff identifies his civil suit Green v. Chamberlain, et al., Case No. 2:19-cv-0109 WBS DMC (E.D. Cal.), which settled in April 2021, as the impetus for defendants' retaliation. (See id. at 5-6.) Plaintiff further claims defendant Molle chilled his speech by throwing away the grievance he filed immediately after his encounter with defendant Lacebal. (Id. at 7.)

Plaintiff's motion does not include the "Statement of Undisputed Facts" required by Local Rule 260(a). See also Fed. R. Civ. P. 56(a) ("A party asserting that a fact cannot be genuinely disputed must support the assertion by… citing to particular parts of materials in the record[.]"). "Pro se litigants must follow the same rules of procedure that govern other litigants." King v.

4

Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-established that district courts must "construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  Accordingly, the court considers the entire record to determine whether plaintiff has "come forward with evidence which would entitle [him] to a directed verdict if the evidence went uncontroverted at trial," Miller, 454 F.3d at 987.

### ii. Defendants' Opposition

Defendants oppose the motion, arguing that defendant Lacebal never made the alleged statement to plaintiff regarding his civil suit and grievances.  (ECF No. 51 at 6.)  Defendants claim they refused to hire or interview plaintiff for the PIA Fabrics position because of his disciplinary and behavioral history, and that their decision advanced the legitimate penological purpose of ensuring the "safety and security of PIA staff and fellow inmates."  (Id. at 6-7)

### iii. Plaintiff's Reply

In his reply, styled as an "opposition to defendants' opposition," plaintiff argues that defendants' reference to his disciplinary and behavioral history is pretext for their retaliatory actions, and in support offers PIA certificates and other miscellaneous records from his past PIA positions (ECF No. 52 at 9-35) and seeks judicial notice of his civil suits where he alleged various PIA and MCSP staff falsified his disciplinary charges (id. at 1-2).[2]

### B.    Filings Related to Defendants' Motion for Summary Judgment

### i. Defendants' Motion

In their motion for summary judgment, defendants again deny defendant Lacebal's alleged statement to plaintiff regarding his civil suit and grievances.  (ECF No. 63-1 at 7.)  They submit evidence of plaintiff's disciplinary history to show their decision not to hire him furthered the legitimate correctional goals of prison safety and security.  (See ECF No. 63-1 at 10-23.)  Alternatively, defendants argue they are entitled to qualified immunity.  (ECF No. 63-1 at 23-24.)

---

[2] Plaintiff also requested judicial notice of his civil suits in his opposition to defendants' motion. (See ECF No. 66 at 30-31.)  The court addresses these requests in Discussion section I, *infra*.

5

### ii. Plaintiff's Opposition

Plaintiff opposes defendants' motion, arguing that his prior civil lawsuits and grievances, not his disciplinary and behavioral history, were the catalysts for defendants' retaliatory actions. (ECF No. 66 at 24-25.) He again points to the allegedly lost June 2021 grievance as evidence of defendants' retaliation. (Id. at 26.) Lastly, plaintiff asserts defendants are not entitled to qualified immunity because they acted unconstitutionally. (Id.)

Plaintiff did reproduce defendants' "Statement of Undisputed Facts" and admit or deny most facts in accordance with Local Rule 260(b). (See ECF No. 66 at 1-21.) But because plaintiff does not address each fact or include with some of his denials a citation to the particular portions of the record, the court again considers the entire record before it. See Adv. Comm. Note to 2010 Amendments to Fed. R. Civ. P. 56(e)(4) ("[T]he court may seek to reassure itself by some examination of the record before granting summary judgment against a pro se litigant."). However, the court will only consider the assertions in plaintiff's opposition that have evidentiary support in the record. A party's mere claim that a matter is "disputed" does not suffice to dispute a fact that is supported by competent evidence. See Coverdell v. Dep't of Soc. & Health Servs., 834 F.2d 758, 762 (9th Cir. 1987) (recitations of unsworn factual allegations do not adequately oppose competent evidence presented in a motion for summary judgment); Burch v. Regents of Univ. of California, 433 F.Supp.2d 1110, 1119 (E.D. Cal. 2006) ("statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not facts and likewise will not be considered on a motion for summary judgment" ) (emphasis omitted).

### iii. Defendants' Reply

On reply, defendants argue that plaintiff did not raise a genuine issue of material fact regarding defendants' lawful motives and advancement of legitimate correctional goals. (ECF No. 69 at 2.) They emphasize plaintiff's failure to address key documents in his disciplinary record and assert that plaintiff's past civil lawsuits and settlement are insufficient to "create a dispute of material fact to unravel his lengthy discipline history." (Id. at 2-4.)

////

////

6

## II. Material Facts

### A. PIA

At all relevant times, plaintiff was incarcerated at MCSP, and the PIA employed both defendants at MCSP. (Defendants' Separate Statement of Undisputed Material Facts ("DSUF") 1-3, ECF No. 63-2.) Defendant Molle was a Manager (DSUF 4) and defendant Lacebal an Industrial Supervisor (DSUF 5).

The PIA is a self-sustaining state agency that "provides productive work assignments for approximately 5,700 incarcerated individuals within the [CDCR]." (DSUF 6.) PIA jobs produce goods and services, including office furniture, food products, shoes, printing service signs, blinders, eyewear, gloves, license players, cell equipment, and more. (DSUF 8.) Through PIA programs, incarcerated individuals can also gain an accredited certification. (DSUF 9.) The PIA fills positions based on several standards, including skill level, behavior and relationships with others, attitude and adaptability, and work/training habits. (DSUF 10.) Assigned PIA works must adhere to expectations, including following instructions and ensuring safety. (DSUF 11.)

### B. Plaintiff's Disciplinary History

Defendants offer records from nine rules violation reports (RVRs) covering plaintiff's time at MCSP and prior incarceration at California State Prison, Sacramento, since 2013:

1) An April 2013 RVR for shouting at an officer during cell checks. (DSUFs 12-16)

2) A July 2014 RVR for battery on a peace officer. (DSUFs 16-19.)

3) An RVR dated October 12, 2017, for disrespect towards a supervisor in the PIA Fabrics Department. (DSUFs 20-29.)

4) An RVR dated December 22, 2017, for disrespect towards a supervisor in the PIA Fabrics Department. (DSUFs 30-41.)

5) An RVR dated April 14, 2018, for delaying a peace officer in the performance of duties. (DSUFs 42-45.)

6) An RVR dated May 12, 2018, for delaying a peace officer in the performance of duties after his visit was ended due to institutional needs and overcrowding. (DSUFs 46-50.)

7) An RVR dated June 11, 2018, for disrespect and threatening behavior during his

7

1 | PIA Coffee Roasting 90-day review.  (DSUFs 51-59.)

2 |       8)     An RVR dated July 26, 2019, for falsification of a grievance against a correctional officer.  (DSUFs 60-63.)

      9)     An RVR dated August 27, 2019, for behavior that could lead to violence based on an incident in visiting area.  (DSUFs 64-70.)

Plaintiff generally admits to a prior disciplinary history but disputes its relevance to this action.  (See ECF No. 66 at 6-14.)  Plaintiff also disputes the substance of the RVRs on grounds that his civil suits and settlement prove they were falsified and/or resolved in his favor.  (Id.)

### C. Plaintiff's Prior Experience with PIA

PIA officials previously removed plaintiff from a position in PIA Fabrics around January 2018.  (DSUF 71.)  PIA staff requested plaintiff's removal because of his behavioral issues.  (DSUF 72.)  After removal from PIA Fabrics, plaintiff was given another opportunity at PIA Coffee Roasting in 2018.  (DSUF 73.)  PIA staff recorded plaintiff's further disciplinary issues in PIA Coffee Roasting that resulted in PIA staff requesting plaintiff's removal in June 2018.  (DSUF 74.)  Plaintiff was "adversely removed" but remained in his assignment until May 2019 due to an oversight.  (DSUFs 75-76.)

In April 2020, Plaintiff sought placement on the PIA waitlist during his annual review with the Unit Classification Committee.  (DSUF 77.)  The Committee denied his request, citing his "continued inability to positively program despite having been incarcerated approximately 37 consecutive years," his "prior negative work performance" and "numerous RVR's" received as a result of his negative behavior while working in a PIA position, "each time resulting in adverse removal."  (DSUFs 78-81, ECF No. 63-3 at 127-28.)  The Committee said that plaintiff would need to "demonstrate a substantial period of sustained positive programming, prior to being reconsidered for PIA placement in the future."  (DSUF 82, ECF No. 63-6 at 128.)

Plaintiff applied for PIA positions later in 2020 and 2021.  (DSUF 83.)  He was put on the waiting list for PIA Healthcare Facilities around October 2020, PIA Fabrics in April 2021, and PIA Coffee Roasting in February or March 2021, but was not interviewed or hired for any of the positions.  (DSUFs 84-85.)  Around May 24, 2021, plaintiff submitted a grievance against a non-

party PIA employee for not interviewing or hiring him for PIA Healthcare Facilities.  (DSUF 87.) Defendant Molle denied the response on June 7, 2021, explaining that plaintiff's past behaviors, which were "serious in nature," did not entitle him to a PIA position.  (DSUF 88-89.)

Plaintiff admits his prior PIA history (ECF No. 66 at 15), but states that his placement on the PIA Fabrics waitlist in April 2021 proves he fulfilled the Committee's condition of demonstrating a substantial period of sustained positive programming.  (See ECF No. 66 at 15; Sworn Declaration of Mr. Vencil Green ("Second Pltf. Decl."), Exh. 2, ECF No. 66 at 37-40.)

### D. Plaintiff's September 2020 Parole Board Hearing

In September 2020, the Parole Board denied plaintiff parole citing his risk of violence; issues with women, authorities, and female supervisors; tenancy to blame others and not accept responsibility; pattern of criminal thinking; his repeat removal from PIA jobs; and anger issues. (DSUFs 90-100.)  Plaintiff admits the parole board denied his parole but claims its decision was based on falsified RVRs and cites to his civil suits for support.  (ECF No. 66 at 15-16.)

### E. Incident on June 18, 2021

The parties agree that June 18, 2021, plaintiff approached defendant Lacebal at the entrance of the Facility B vocation center and inquired about his job status.  (DSUFs 101-102.) The parties' versions of the encounter then diverge.

Plaintiff alleges he introduced himself to defendant Lacebal and explained that the Unit Classification Committee had approved and placed him on the waitlist list for PIA Fabrics back in April 2021, yet he had not been interviewed or hired.[3]  (ECF No. 1 at 6.)  Defendant Lacebal responded, "Green, I know who you are, but my Supervisor [Molle] has given me a directive not to hire you because of all of your past grievances and civil suit against…P.I.A. staff."  (Id.)

---

[3] The court will allow plaintiff to use his sworn complaint as an opposing affidavit.  A complaint submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 if its allegations arise from personal knowledge and contain specific facts admissible into evidence.  See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff members . . . made statements from which a jury could reasonably infer a retaliatory motive").

Plaintiff submits the declarations of five inmate witnesses who attest defendant Lacebal made the statement. (Plaintiff's Declaration ("Pltf. Decl."), Exhs. 3, ECF No. 46-1 at 21-29.) Plaintiff had settled a civil lawsuit involving the PIA in April 2021 (Id., Exh. 4 at 30-34), and one of the defendants in that action worked with defendant Lacebal (id., Exh. 2 at 10.)

Defendant Lacebel denies making this statement or otherwise indicating to plaintiff that she would not hire him for past grievances or civil lawsuits.[4] (Declaration of V. Lacebal ("Lacebal Decl.") ¶ 3, ECF No. 51-2 at 2.) Defendant Lacebel claims that as she was getting to work, plaintiff was waiting outside of the entrance to the Fabrics Department at MCSP. (Id. ¶ 8, ECF No. 51-2 at 3.) As defendant Lacebal walked towards the entrance, "[Plaintiff] followed me and positioned himself directly in front of me, blocking my entrance into the building. He started yelling at me and demanded that I interview him for a position in the Fabrics Department. I feared for my safety given his aggressive demeanor and body language." (Id.) Plaintiff counters that he "politely approached" defendant Lacebal and never blocked her entrance, nor was he aggressive or demanding. (Second Pltf. Decl. ¶ 1, ECF No. 66 at 48.)

## DISCUSSION

### I.    Plaintiff's Request for Judicial Notice

Plaintiff requests judicial notice of two of his civil lawsuits: (1) Green v. Chamberlain, et al., Case No. 2:19-cv-0109 WBS DMC (E.D. Cal.), in which he alleged PIA staff falsified his RVRs; and (2) Green v. Link, et al., 1:19-cv-1324 JAM KJN (E.D. Cal.), in which he similarly alleged MCSP staff issued false RVRs. (ECF No. 52 at 1-2; ECF No. 66 at 30-31.) Both cases were resolved in a global settlement in April 2021. (Pltf. Decl., Exh. 4, ECF No. 46-1 at 33-34.)

Plaintiff seeks judicial notice of the cases to rebut defendants' evidence of his past misbehavior and rule violations. Specifically, plaintiff alleges the lawsuits prove MCSP and PIA staff falsified his past RVRs, and thus undermine defendants' arguments here that plaintiff had a disciplinary history that precluded assignment to PIA Fabrics. (See ECF No. 52 at 5-6; No. 66 at 5-16.) Defendants argue the case records are irrelevant and that the disputed facts and allegations

---

[4] Defendant Molle similarly denies ever directing Lacebal not to hire plaintiff because of his grievances or lawsuits. (Declaration of K. Molle ("Molle Decl.") ¶ 3, ECF No. 51-1 at 2.)

contained therein are not judicially noticeable. (ECF No. 54 at 4-5; ECF No. 69 at 4, n.1.)

A court may judicially notice facts when they are "not subject to reasonable dispute because," *inter alia*, they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Therefore, plaintiff's request is granted to the extent he seeks to judicially notice the existence of the two lawsuits and their filings. See Harris v. County of Orange, 682 F.3d 1126, 1131–32 (9th Cir. 2012) (courts may take judicial notice of "documents on file in federal or state courts").

However, "a court cannot take judicial notice of disputed facts contained in such public records." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018); see also Betkey v. Cnty. of Los Angeles, No. CV 16-5863 DMG AGRX, 2017 WL 11632281, at *1 (C.D. Cal. Aug. 31, 2017) (declining to judicially notice documents from other lawsuits that "assert contested facts central to the instant litigation"). The facts and allegations in the two cases' records are clearly in dispute; while plaintiff argues the lawsuits prove the underlying RVRs were falsified, the global settlement agreement he submitted shows that defendants did not admit liability and plaintiff waived all claims. (ECF No. 66 at 33-34.) Thus, for purposes of this action, the court will not take notice of the two lawsuits' disputed facts and allegations, including the allegations that the RVRs central to this action were falsified.

## II.    Analysis

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and (4) that such action chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (citations omitted).

"The most fundamental of the constitutional protections that prisoners retain are the First Amendment rights to file prison grievances and to pursue civil rights litigation in the courts, for '[w]ithout those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices.'" Entler v. Gregoire, 872 F.3d 1031, 1039 (9th Cir. 2017) (quoting Rhodes, 408 F.3d at 567).

### A. Adverse Action

The first element of a retaliation claim requires plaintiff to prove defendants took adverse action against him. Rhodes, 408 F.3d at 568. Though an adverse action need not be an independent constitutional violation, inconsequential or *de minimis* harms do not suffice. Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (to support a claim a harm must be "more than minimal") (citations omitted). A retaliation claim may assert an adverse action "no more tangible than a chilling effect on First Amendment rights." Brodheim v. Cry, 584 F.3d 1262, 1269–70 (9th Cir. 2009) (quoting Gomez v. Vernon, 255 F.3d 1118, 1127 (9th Cir. 2001)).

Plaintiff argues that defendants' refusal to hire or interview him for a position with PIA Fabrics was "adverse and enough to chill or silence Plaintiff from future First Amendment activities." (ECF No. 46 at 8.) Specifically, plaintiff claims defendants' decision denied him opportunities to acquire work skills and to have a source of income for cosmetic and personal hygiene items. (Id.; see also Deposition of V. Green 92:3-5 ("[W]hat appeals to me about [PIA] is not only the pay, but the training.").)

The denial of a prison job can constitute an adverse action for purposes of First Amendment retaliation. See, e.g., Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991) ("[A]lthough plaintiff has no right to a job or to any particular assignment, prison officials cannot punish plaintiff for exercising his first amendment rights by denying him certain job assignments.") (citation omitted); Bartholomew v. Moore, No. CIV S-08-3058 KJM CKD P, 2012 WL 259412, at *5 (E.D. Cal. Jan. 27, 2012), report and recommendation adopted in part, No. CIV S-08-3058 KJM CKD P (E.D. Cal. Mar. 30, 2012) (finding prison's refusal to rehire plaintiff after he was released from administrative segregation was "more than minimal harm" for purposes of First Amendment retaliation). Thus, plaintiff has met his burden.

Defendants do not appear to dispute the first element. Although the parties sharply disagree on the reasons why plaintiff was not interviewed or hired for the PIA Fabrics position, the bases for defendants' refusals are pertinent to other elements of the retaliation test, namely causation and the advancement of legitimate penological interests. Accordingly, the undersigned finds that plaintiff has established that defendants' refusal to interview and hire him was an

adverse action for purposes of First Amendment retaliation.

### B.     Causation

To satisfy the second and third elements, a plaintiff must show that his protected conduct was "the 'substantial' or 'motivating' factor behind the defendant's conduct." Brodheim, 584 F.3d at 1271 (9th Cir. 2009) (citation omitted). Here, plaintiff must "put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [defendants'] intent" in refusing to assign him to PIA Fabrics. See Shepard v. Quillen, 840 F.3d 686, 689 (9th Cir. 2016) (quoting Brodheim, 584 F.3d at 1271).

The parties' differing accounts of the incident on June 18, 2021, are sufficient to create a genuine factual dispute as to causation. Defendant Lacebal's statement, as alleged by plaintiff and supported by his verified complaint and the sworn declarations of five inmate witnesses, explicitly links plaintiff's protected activities to defendants' refusal to hire him. The timing of defendant Lacebal's alleged statement – two months after the global settlement of plaintiff's civil lawsuits – supports an inference of retaliatory motive. See Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent"). Defendant Lacebal vehemently denies making the statement and claims plaintiff approached her aggressively, yelled, and demanded he receive an interview. Thus, as to both parties' motions, the court finds the evidence sufficient to "require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W., 809 F.2d at 630 (citation omitted).

The June 18, 2021, incident notwithstanding, defendants argue in their motion that earlier decisions not to hire plaintiff based on his behavior demonstrate that defendants' decisions were not "because of" any protected content. (ECF No. 63-1 at 25-27.) For example, in his letter dated June 7, 2021, less than two weeks before the incident between plaintiff and defendant Lacebal, defendant Molle denied plaintiff a position with PIA Healthcare Facilities because of his history of serious rule violations. (ECF No. 63-1 at 27.) Defendants assert that plaintiff's failure to address or deny this letter renders his allegations "highly implausible" and "worthy of awarding summary judgment" in defendants' favor. (ECF No. 69 at 3.)

The trier of fact may ultimately find plaintiff's causation arguments implausible. But on

summary judgment, the court's role is "not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." See Tolan v. Cotton, 572 U.S. 650, 656 (2014) (quoting Anderson, 477 U.S. at 249) (per curiam). Further, plaintiff need not resolve the issue of causation conclusively in his favor to establish a genuine issue of material fact. See T.W., 809 F.2d at 630. Accordingly, the court finds that the parties' differing versions of the incident on June 18, 2021, are sufficient to establish a genuine dispute regarding causation.

### C. Chilling

The fourth element is governed by an objective standard. "[A] plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill *or* silence a person of ordinary firmness from future First Amendment activities.'" Brodheim, 584 at 1271 (quoting Rhodes, 408 F.3d at 568–69). "To hold otherwise 'would be unjust' as it would 'allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity.'" Id. (quoting Rhodes, 408 F.3d at 569.)

As with the related first element, defendants do not appear to dispute chilling. Because plaintiff has satisfied the adverse action element of his retaliation claim, he has also established that defendants' refusal to hire or interview him for the PIA Fabrics position chilled his exercise of First Amendment rights. See Rhodes, 408 F.3d at 567-68 n.11 ("[H]arm that is more than minimal will almost always have a chilling effect."). Plaintiff need not separately prove his speech was chilled under the element's objective standard.[5] See Brodheim, 584 F.3d at 1271.

### D. Legitimate Penological Interest

Because a prisoner's First Amendment rights are necessarily curtailed, the fifth and final element requires a finding that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve

---

[5] Plaintiff argues at length that defendant Molle chilled his First Amendment rights by not responding to his June 2021 grievance, #MCSP-21-34. (See ECF No. 1 at 8-10; ECF No. 46 at 6-7; ECF No. 66 at 23-24.) However, plaintiff's own evidence includes the PIA's response dated June 24, 2021, indicating the grievance was accepted. (ECF No. 66 at 76.) Thus, despite plaintiff's repeated references to that grievance, it has no relevance to his retaliation claim.

such goals." Pratt, 65 F.3d at 806 (quoting Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985)). "The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." Pratt, 65 F.3d at 806. Federal courts "should 'afford appropriate deference and flexibility' to prison officials [when evaluating the] proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482-83 (1995)).

Defendants argue that they did not interview or hire plaintiff because of his disciplinary history and their concern for the safety and security of PIA staff. (See Molle Decl. ¶ 9, ECF No. 51-1 at 3; Lacebal Decl. ¶ 10, ECF No. 51-2 at 3.) "It is beyond question" that prison security is a legitimate correctional goal. Mauro v. Arpaio, 188 F.3d 1054, 1059 (9th Cir. 1999) (citations omitted). As reproduced above, defendants' evidence exhaustively chronicles plaintiff's prison disciplinary history and, as defendants assert, requires the conclusion that that "[a]ny reasonable employer would have made the same decision." (ECF No. 69 at 7; see also ECF No. 63-1 at 19.)

Given the volume of evidence of plaintiff's behavior and the deference owed to prison officials, defendants have met their burdens as to their advancement of a legitimate penological interest. In rebuttal, plaintiff relies on his civil suits and April 2021 settlement to refute his prior rule violations. As explained above, the court will not judicially notice his lawsuits' contested facts and allegations,[6] and the existence of his global settlement does not substantiate his allegations or otherwise wipe his disciplinary slate clean. Therefore, plaintiff's civil suits and settlement do not create triable issues regarding defendants' legitimate penological interests.

However, plaintiff also argues, convincingly, that his placement on the PIA Fabrics waitlist in April 2021 indicates that the Unit Classification Committee did not deem him a safety or security risk. (ECF No. 66 at 15.) Plaintiff does not dispute that the Committee refused to place him on a PIA waitlist in April 2020 because of his behavior and inability to positively program, or that the Committee stated he would "need to demonstrate a substantial period of

---

[6] The Court's ruling on this issue for purposes of the summary judgment record does not preclude Plaintiff from attempting to introduce at trial direct and admissible evidence concerning the earlier RVRs, subject to the Federal Rules of Evidence and other applicable laws.

15

sustained positive programming, prior to being reconsidered for PIA placement in the future." (DSUFs 77-82.) Drawing all inferences supported by the evidence in favor of plaintiff, his placement on the waitlist a year later suggests that he did in fact exhibit a substantial period of sustained positive programming. That creates a triable issue as to his safety and security risk.

Moreover, as discussed above, plaintiff's evidence establishes a genuine issue regarding defendants' retaliatory motive. The Ninth Circuit has held that "prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right." Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003); see also Shepard, 840 F.3d at 692 (9th Cir. 2016) (same). Therefore, because plaintiff has established a genuine issue of material fact as to causation, Ninth Circuit precedent compels the conclusion that defendants' safety and security justification is insufficient to defeat plaintiff's retaliation claim on summary judgment.

For example, in Bruce, an inmate alleged that prison officials validated him as a gang member in retaliation for the filing of his grievances. 351 F.3d at 1288. While recognizing the prison's legitimate interest in stopping gang activity, the Ninth Circuit held that the prison officials could not assert the inmate's validation served a legitimate penological purpose if they used the validation procedures to silence and punish him for filing grievances – "even though he may have arguably ended up where he belonged." Id.

Similarly, in Johnson v. Ryan, 55 F.4th 1167, 1201 (9th Cir. 2022), an inmate alleged prison officials transferred him to maximum custody in retaliation for his civil lawsuit. Prison officials argued that the inmate's removal advanced the legitimate correctional goal of curtailing gang activity and was supported by the evidence. Id. at 1202. Citing Bruce, the Ninth Circuit found that even if the inmate "arguably ended up where he belonged," the presence of a genuine dispute of material fact with respect to a retaliatory motive meant that "Defendants' general justification for the action is not sufficient to defeat summary judgment." Id. The Court further explained that if the prison used transfer procedures to punish the inmate for filing a lawsuit, "their use of these procedures was pretextual and not a reasonable advancement of the legitimate

1  penological goal of stopping prison gang activity." Id. (emphasis in original).

2  Here, as in Bruce and Johnson, plaintiff may have "arguably ended up where he belonged," i.e., without an assignment to PIA Fabrics. But because the parties' dueling versions of the incident on June 18, 2021, create a genuine issue of fact regarding defendants' retaliatory motive, supra, the court finds that a triable issue also exists as to whether defendants' refusal to interview or hire plaintiff reasonably advanced a legitimate penological purpose. See Shepard, 840 F.3d at 692 ("As Bruce recognized, a prison official who uses a valid procedure as subterfuge to obscure retaliation 'cannot assert that [his action] served a valid penological purpose even though [the prisoner] may have arguably ended up where he belonged.'")

3  Defendants' final argument regarding the fifth element is unavailing. Citing Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994), defendants argue that their evidence "far surpasses the low bar of 'some evidence' needed to show a legitimate penological purpose to sustain summary judgment." (ECF No. 69 at 6). But the Ninth Circuit expressly held in Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997), and later reaffirmed in Bruce, 351 F.3d at 1289, that Barnett did not extend the deferential "some evidence" standard to First Amendment retaliation claims. Accordingly, the undersigned finds that a genuine issue exists as to whether defendants' actions reasonably advanced the legitimate penological interests of prison safety and security.

### III. Qualified Immunity

Defendants also claim entitlement to qualified immunity. "In § 1983 actions, qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Sampson v. Cnty. of Los Angeles, 974 F.3d 1012, 1018 (9th Cir. 2020). In resolving qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the officials violated a constitutional right. The second asks whether that right was "clearly established" at the time of the alleged constitutional violation. Peck v. Montoya, 51 F.4th 877, 887 (9th Cir. 2022) (citing Tolan, 572 U.S. at 655-56).

Starting with the first prong, defendants assert plaintiff cannot prove there was an actual

17

constitutional violation. (ECF No. 63-1 at 30-31.) As explained above, plaintiff raised material issues as to defendants' retaliatory motive and reasonable advancement of legitimate penological issues. Defendants appear to concede the second prong in stating plaintiff has a "well-established right to be free from retaliation." (ECF No. 63-1 at 30.) Indeed, in the prison context, the "prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit for qualified immunity purposes." Chavez v. Robinson, 12 F.4th 978, 1001 (9th Cir. 2021) (quoting Pratt, 65 F.3d at 806.) Accordingly, defendants are not entitled to summary judgment on qualified immunity grounds. See Ortiz v. Alvarez, 341 F. Supp. 3d 1087, 1109-10 (E.D. Cal. 2018) (denying qualified immunity to defendant where genuine issue of material fact existed as to defendant's alleged retaliatory motive).

**CONCLUSION**

In resolving the parties' cross motions for summary judgment, the undersigned finds that triable issues of fact exist as to defendants' retaliatory motive and reasonable advancement of legitimate penological interests. Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 46) be denied; and
2. Defendants' motion for summary judgment (ECF No. 63) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 22, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE